# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**KEITH MOODY**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 20-2656-WBV-DMD**

**ROBERT WALKER, ET AL.**                          **SECTION: D (4)**

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), filed by Robert Walker.[1]  Also before the Court is a Motion to Dismiss, filed by Timothy Baudier and the City of Harahan.[2] Keith Moody filed a Consolidated Opposition to Defendants' Motions to Dismiss.[3]  Walker, Baudier and the City of Harahan filed Reply briefs in support of their respective Motions.[4] Additionally, on August 2, 2021, the parties filed a Joint Stipulation of Dismissal With Prejudice, dismissing with prejudice all of Moody's claims against Baudier and dismissing with prejudice Moody's official capacity claims against Walker.[5]

After careful consideration of the parties' memoranda and the applicable law, both Motions to Dismiss are **GRANTED in part** and **DENIED in part as moot**.

---

[1] R. Doc. 5.
[2] R. Doc. 6.
[3] R. Doc. 19.
[4] R. Docs. 29 & 30.
[5] R. Doc. 61.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Keith Moody ("Plaintiff"), was hired by the Harahan Police Department ("HPD") on March 4, 2019 as Assistant Chief of Police.[6] Robert (Tim) Walker ("Chief Walker") has been the Chief of the HPD since November 16, 2014.[7]  Timothy Baudier ("Mayor Baudier") has been the Mayor of the City of Harahan since January 2019.[8]  Plaintiff alleges that in June 2020, he spoke privately to Chief Walker and requested a meeting with Chief Walker and Mayor Baudier concerning alleged ticket fixing, specifically a ticket that had been issued to a local politician in October 2019.[9]  Plaintiff alleges that about a month after the issuance of the ticket, he could not locate the citation in the HPD automated reporting management system. [10]

Plaintiff alleges that the meeting was held on June 26, 2020, and was attended by Plaintiff, Mayor Baudier, Chief Walker, City Attorney Scott Stansbury, Councilman Jason Asbill and Councilman Eric Chatelain.[11]  Plaintiff contends that the meeting began with a discussion of the HPD Facebook page, which Plaintiff had set up, managed and controlled since October 2013 with the permission of former Chief of HPD, Jacob Dickenson, and Chief Walker.[12]  Plaintiff asserts that City Attorney Stansbury and Councilman Asbill "expressed strong disapproval of the HPD

---

[6] R. Doc. 1 at ¶ 18.
[7] *Id.* at ¶¶ 10, 17.
[8] *Id.* at ¶ 12.
[9] *Id.* at ¶¶ 20-24.
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶ 25.
[12] *Id.* at ¶ 26.

Facebook Page being privately set up, managed, and controlled by a private citizen."[13] In response, Plaintiff advised that he would remove all official indicia from the Facebook page, but that the reformatted page would continue as a "source of public information on local law enforcement in general."[14]

Plaintiff alleges that he then moved the discussion to the ticket fixing problem, and pleaded to everyone not to fix tickets because the practice was causing morale issues with the traffic police officers and public perceptions of impropriety.[15]  Plaintiff excused himself from the meeting after he was finished, but Chief Walker remained behind and advised Plaintiff that he had other matters to discuss with the parties present.[16]  Later that same day, Plaintiff removed all official indicia of the HPD from the Facebook page and changed its name to "Local Police Matters."[17]  The following day, June 27, 2020, Plaintiff alleges that he posted the following statement on the "Local Police Matters" Facebook page:

> [...] Please, know, ALTHOUGH what we post may be offensive to a few politicians, criminals, or snowflakes, WE THE PEOPLE will ALWAYS fight to protect and defend the constitution against ALL enemies, foreign and DOMESTIC! My ONY [sic] INTENTION with the HPD page is to keep you INFORMED.  I will continue to fight suppression, oppression and be TRANSPARENT to our community concerning safety

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 27.
[16] *Id.* at ¶ 28.
[17] *Id.* at ¶ 30.

and criminal activities.  Thank you all for the texts, calls, emails and messages concerning OUR (your Police) page […].[18]

Plaintiff alleges that on Monday, June 29, 2020, Chief Walker entered Plaintiff's office and terminated Plaintiff without explanation.[19]

On September 30, 2020, Keith Moody filed the instant Complaint against Chief Walker, in his official and individual capacities, Mayor Baudier, in his official and individual capacities, and the City of Harahan, based upon Plaintiff's unlawful termination.[20]  Plaintiff asserts three distinct claims against the Defendants.  In Count I, Plaintiff alleges a 42 U.S.C. § 1983 claim based upon a violation of his due process rights under the Fourteenth Amendment of the United States Constitution and under La. R.S. 33:2570(B)(2) and the Louisiana Police Officers' Bill of Rights, La. R.S. 40:2351(C).[21]  Plaintiff alleges that, under La. R.S. 33:2570(B)(2), he had the same employment rights as any other employee in the municipal fire and police civil service and, therefore, was entitled to notice and an opportunity to be heard prior to his termination.[22]  Plaintiff contends that Chief Walker, acting under color of state law, failed and refused to provide Plaintiff with any pre-deprivation notice, any meaningful pre-deprivation hearing, or any meaningful opportunity to respond prior to his termination, all in violation of La. R.S. 33:2570(B)(2).[23]  Plaintiff further contends that he was entitled to a number of procedural safeguards provided for in

---

[18] *Id.*
[19] *Id.* at ¶¶ 32-33.
[20] R. Doc. 1.
[21] *Id.* at ¶¶ 34-41.
[22] *Id.* at ¶ 34.
[23] *Id.* at ¶ 37.

the Louisiana Police Officers' Bill of Rights, La. R.S. 40:2531(C), and that Chief Walker violated those rights by depriving Plaintiff of an investigation conducted in accordance with the minimum standards provided for in the statute.[24]   Plaintiff alleges that Mayor Baudier violated Plaintiff's constitutional rights by "carrying out and ratifying the plainly unconstitutional acts of Walker" and, in so doing, was deliberately indifferent to Plaintiff's federally protected rights.[25]   Plaintiff claims that Walker and Baudier were the primary policymakers of police and municipal matters, respectively, in the City of Harahan.[26]

In Count II, Plaintiff alleges that Chief Walker and Mayor Baudier "acted together to violate Plaintiff's First Amendment rights when they almost immediately terminated Plaintiff for exercising his first Amendment free-speech right to publish a [sic] his personal opinions on general matters of local public safety on the Facebook page."[27]   Plaintiff also alleges that in doing so, Chief Walker and Mayor Baudier acted for the City of Harahan.[28]   Finally, in Count II, Plaintiff alleges that Chief Walker and Mayor Baudier, acting for the City of Harahan, violated the Louisiana Whistleblower Act, La. R.S. 23:967, by terminating Plaintiff for objecting to the practice of "ticket fixing" at the HPD and for refusing to participate in the illegal practice.[29]   In his request for relief, Plaintiff seeks: (1) a declaratory judgment that Defendants, in terminating his employment, violated his rights to due process and

---

[24] *Id.* at ¶ 38.
[25] *Id.* at ¶ 40.
[26] *Id.* at ¶ 41.
[27] *Id.* at ¶ 42.
[28] *Id.* at ¶ 43.
[29] *Id.* at ¶ 45.

free speech, as well as Plaintiff's right to free speech; (2) injunctive relief ordering Defendants to reinstate Plaintiff to his position and salary held prior to his termination; (3) to enjoin Defendants from engaging in the policies and practices complained of in the Complaint; (4) damages for unpaid wages, punitive damages, pre-judgment interest and post-judgment interest; and (5) attorney's fees, experts' fees, and costs incurred in bringing this action.[30]

On November 16, 2020, Chief Walker filed a Motion to Dismiss Pursuant to Rule 12(b)(6), seeking to dismiss all claims asserted against him in the Complaint.[31] That same day, Mayor Baudier and the City of Harahan also filed a Motion to Dismiss under Rule 12(b)(6).[32]

### A. Chief Walker's Motion to Dismiss

In his Motion to Dismiss, Chief Walker asserts that any official capacity claims brought against him must be dismissed as redundant because individuals cannot maintain suits against both government officials and the governmental entity for which they work.[33] Chief Walker further asserts that Plaintiff's § 1983 claim in Count I must be dismissed because the Complaint is devoid of any allegation that Plaintiff has any property right in his continued employment.[34] Chief Walker claims that under Louisiana law, a person acquires a protectible property interest in a government job only if the contract has a "for cause" termination clause, or if the

---

[30] *Id.* at p. 9.
[31] R. Doc. 5.
[32] R. Doc. 6.
[33] R. Doc. 5-1 at pp. 3-4.
[34] *Id.* at p. 4.

employee is classified under the state civil service system.[35]   Chief Walker argues
that Plaintiff has not alleged that he had a contract and that La. R.S. 33:2570
specifies that, "the position of assistant chief of police of Harahan is in the
unclassified service."[36]  As such, Plaintiff has no protectable property interest in his
job.[37]   Chief Walker further asserts that Plaintiff's reliance upon La. R.S.
33:2570(B)(2) is misplaced because the statute only ensures that assistant chiefs of
HPD who were members of the classified civil service prior to their promotion do not
lose the rights to which they were entitled when they were promoted.  Chief Walker
points out that Plaintiff, who owned a bar before he was hired as assistant chief of
police of HPD, is not and has never been a member of the classified civil service.  As
such, the statute does not apply.[38]

Chief Walker further asserts that La. R.S. 40:2531, the Louisiana Police
Officers' Bill of Rights, likewise does not provide Plaintiff with a property interest in
his job.[39]  Chief Walker asserts that in *Cobb v. City of Harahan*, the Fifth Circuit held
that a statute that specifies how employment may be terminated, but is silent as to
the reasons why employment may be terminated, does not provide an employee with
a property interest.[40]  Chief Walker further asserts that La. R.S. 40:2531 does not
apply in this case because it only applies to police employees "who are under

---

[35] *Id*. at p. 5 (quoting *Vanderwall v. Peck*, 129 Fed.Appx. 89, 91 (5th Cit. 2005)) (quotation marks omitted).
[36] R. Doc. 5-1 at p. 5.
[37] *Id*.
[38] *Id*. at pp. 5-6.
[39] *Id*. at p. 6.
[40] *Id*. (citing *Cobb v. City of Harahan*, 516 Fed.Appx. 337, 341 (5th Cir. 2013)).

investigation with a view to possible disciplinary action, demotion, or dismissal."[41] Chief Walker points out that Plaintiff specifically alleged that he was never the subject of an investigation. Alternatively, if the Court finds that Plaintiff was entitled to a hearing prior to his termination, the proper defendant is the government employer, not a government employee or official and, therefore, any claim against Chief Walker must be dismissed.[42]

Chief Walker further asserts that he is entitled to qualified immunity from Plaintiff's First Amendment retaliation claim in Count II, which must be dismissed.[43] Relying on Fifth Circuit jurisprudence, Chief Walker asserts that to establish that he was discharged in retaliation for engaging in constitutionally protected speech, Plaintiff must prove that: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in efficient provision of public services; and (4) the speech precipitated the adverse employment action.[44] Addressing the third factor, Chief Walker asserts that, even assuming that Plaintiff was speaking as a citizen on a matter of public concern when he created the Facebook post on June 27, 2020, Chief Walker's interest in maintaining the integrity of the HPD's public reputation as a non-partisan entity clearly outweighs Plaintiff's right to post on the Facebook page

---

[41] R. Doc. 5-1 at p. 7 (quoting *State v. Jones*, 2019-1285 (La. App. 1 Cir. 5/11/20), 2020 WL 2393794) (internal quotation marks omitted).
[42] R. Doc. 5-1 at p. 7.
[43] *Id.* at pp. 8-10.
[44] *Id.* at p. 8 (quoting *Anderson v. Valdez*, 913 F.3d 472, 476-77 (5th Cir. 2019)) (internal quotation marks omitted).

as a private citizen alluding to his political differences with Harahan's elected officials.[45]

Finally, Chief Walker asserts that Plaintiff's claim in Count III, brought under the Louisiana Whistleblower Act, La. R.S. 23:967, must be dismissed because he is not Plaintiff's employer.[46]

### B. Mayor Baudier and the City of Harahan's Motion to Dismiss

With the exception of Chief Walker's assertion of qualified immunity, the Motion to Dismiss filed by Mayor Baudier and the City of Harahan ("the "City") seeks dismissal of all but two of Plaintiff's claims for the same reasons argued by Chief Walker.[47] Like Chief Walker, Mayor Baudier and the City assert that Plaintiff's official capacity claims against Mayor Baudier must be dismissed because they are redundant of Plaintiff's claims against the City.[48] Mayor Baudier and the City also assert that Plaintiff's § 1983 claims against them must be dismissed because Plaintiff did not have a property interest in his employment at the time of his termination.[49] Like Chief Walker, they assert that Plaintiff did not have an employment contract with a termination for cause clause and that La. R.S. 33:2570(A) specifically provides that the assistant chief of police is an unclassified position.[50] Relying upon the same legal authority cited by Chief Walker, Mayor Baudier and the City further assert that

---

[45] R. Doc. 5-1 at p. 11.
[46] *Id.* at pp. 11-13 (citing authority).
[47] R. Doc. 6.  Mayor Baudier and the City assert they do not seek dismissal of Plaintiff's First Amendment retaliation claim against the City or Plaintiff's Louisiana Whistleblower Act claim against the City.  R. Doc. 6-2 at p. 1.
[48] *Id.* at pp. 4-5 (citing *Barker v. City of Plaquemine*, Civ. A. No. 17-340, 2019 WL 4580047, at *4 (M.D. La. Sept. 20, 2019)).
[49] R. Doc. 6-2 at p. 5.
[50] R. Doc. 6-2 at p.6 (*citing* R. Doc. 1 at ¶ 18; La. R.S. 33:2570).

the Police Officers' Bill of Rights, La. R.S. 40:2531, does not create a property interest in employment.[51]   Mayor Baudier and the City of Harahan also make the same argument as Chief Walker that La. R.S. 40:2531 is inapplicable in this case because Plaintiff has not alleged that he was under investigation.[52]

Mayor Baudier and the City of Harahan further assert that Plaintiff's § 1983 claim against the City must be dismissed because Plaintiff has failed to allege facts showing that the City can be held liable for the actions of Chief Walker, since Plaintiff did not allege the existence of any policy, official or unofficial, let alone a policy that was the "moving force" behind the alleged violation of his constitutional rights.[53] Mayor Baudier and the City likewise assert that Plaintiff's § 1983 claim against Mayor Baudier in his supervisory capacity must be dismissed because Plaintiff has failed to allege that Mayor Baudier had any involvement in the alleged failure to provide Plaintiff due process, or that Mayor Baudier terminated him or made the decision to terminate him.[54]   To the extent Plaintiff alleges that Mayor Baudier violated his constitutional rights by "carrying out and ratifying the plainly unconstitutional acts of Walker," Mayor Baudier and the City of Harahan assert that this is plainly conclusory and that Plaintiff has not alleged any facts showing that Mayor Baudier affirmatively participated in the acts that caused Plaintiff's alleged constitutional deprivation.[55]   Mayor Baudier and the City of Harahan further assert

---

[51] R. Doc. 6-2 at pp. 7-8 (citing *Madison v. City of Patterson,* Civ. A. No. 18-0175, 2018 WL 4624185, at *8-9 (W.D. La. Sept. 26, 2018); *Cobb v. City of Harahan*, 516 Fed.Appx. 337, 340-41 (5th Cir. 2013)).
[52] R. Doc. 6-2 at p. 8 (*quoting* La. R. S. 40:2531(A)) (quotation marks omitted).
[53] R. Doc. 6-2 at pp. 8-10 (citing *Doe ex rel. Magee v. Covington County School Dist. ex. rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc)).
[54] R. Doc. 6-2 at pp. 10-11 (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).
[55] R. Doc. 6-2 at p. 11.

that Plaintiff cannot impute liability for Chief Walker's actions to Mayor Baudier under Louisiana law, including the Lawrason Act, La. R.S. 33:404, under which the mayor of Harahan has the powers, duties, and responsibilities to "supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances . . . ."[56] Mayor Baudier and the City of Harahan further assert that La. R.S. 33:2570(A) explicitly states that, "[t]he right of selection, appointment, supervision, and discharge for the position[of Assistance [sic] Chief of Policy [sic] for the City of Harahan] is vested in the chief of police of the city."[57]

Mayor Baudier and the City of Harahan further assert that Plaintiff's First Amendment retaliation claim against Mayor Baudier should be dismissed for the same reason that his due process claim against Mayor Baudier should be dismissed.[58] Specifically, Plaintiff has failed to plead facts showing that Mayor Baudier affirmatively participated in the act causing his constitutional deprivation (Plaintiff's termination) or that Mayor Baudier implemented an unconstitutional policy that caused his alleged constitutional deprivation.  Like Chief Walker, Mayor Baudier and the City of Harahan further assert that Plaintiff's claim against Mayor Baudier under the Louisiana Whistleblower Act should be dismissed because the Act does not provide for individual liability.[59]

---

[56] R. Doc. 6-2 at p. 12 (*quoting* La. R.S. 33:404) (emphasis added by Mayor Baudier and the City of Harahan).
[57] R. Doc. 6-2 at p. 12 (*quoting* La. R.S. 33:2570(A)) (quotation marks omitted).
[58] R. Doc. 6-2 at pp. 12-13.
[59] *Id.* at pp. 13-14 (citing *Farmer v. Mouton*, Civ. A. No. 16-16459, 2017 WL 1837812, at *9 (E.D. La. May 8, 2017); *Mitchell v. Vieth*, Civ. A. No. 12-02151, 2014 WL 111827, at *3 (W.D. La. Jan. 10, 2014)).

### C. Plaintiff's Consolidated Opposition Brief

Plaintiff filed one Consolidated Opposition to the two Motions to Dismiss, arguing that the factual allegations of his Complaint sufficiently support his claims.[60] Although not a model of clarity, Plaintiff appears to assert that his official capacity claims against Mayor Baudier and Chief Walker are not redundant of the claims against the City of Harahan because "Louisiana law makes public officials individually liable for their own illegal conduct."[61]  Plaintiff also claims that he has accused Mayor Baudier of engaging in or promoting intentional wrongful acts associated with ticket fixing in the course and scope of his duties as mayor.[62]  Plaintiff asserts that, "It is far from clear that the City of Harahan stands in the shoes of its Mayor when he engages in intentional acts associated with ticket fixing, or whether the City of Harahan should or could be responsible for such acts."[63]

Turning to his individual capacity claims against Chief Walker and Mayor Baudier, Plaintiff acknowledges that, "to succeed on a § 1983 claim against an official in his individual capacity, a plaintiff must 'establish that the defendant was either personally involved in the deprivation **or** that his wrongful actions were *causally connected* to the deprivation.'"[64]  Plaintiff claims that he has alleged that Chief Walker and Mayor Baudier were the policymakers for the HPD and the City of Harahan, and that the policy and practice of fixing traffic tickets in the City Court of

---

[60] R. Doc. 19 at p. 2.
[61] *Id.* at p. 8.
[62] *Id.*
[63] *Id.*
[64] *Id.* at p. 5 (quoting *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012)) (emphasis added by Plaintiff).

Harahan, or acquiescing in the fixing of such tickets, came directly from the policymakers.[65]  As to his municipal liability claim against the City, Plaintiff asserts that his "good faith and factually based belief that the Mayor and other senior policy makers were actively engaging in the ill practice of fixing tickets equates, in the 12(b)(6) context, to a *de facto* a [sic] custom, policy, practice and usage having the force and effect of law for the police department."[66]  Plaintiff claims that Chief Walker, the policymaker of HPD, knew or should have known that the ticket fixing policy was in place and enforced and, as such, the City of Harahan is liable for the actions of Mayor Baudier and Chief Walker.[67]

Regarding his § 1983 claim based upon due process violations, Plaintiff asserts that he had a property right in his job as Assistant Chief of Police under La. R.S. 33:2570 because "the facts will show that Chief Walker exercised his prerogative under LA R.S. § 33:2570A to promise Moody that he would be secure in his employment as assistant chief for three years of Walker's term," and because "The facts will show that Chief Walker, acting in the course and scope of his duties as Chief of Police, used this statutory authority to enter into a subsequent employment agreement with Keith Moody which assured Moody continued employment as assistant chief for the three years of Walker's term."[68]

Plaintiff further asserts that Chief Walker and Mayor Baudier are not entitled to qualified immunity because he has alleged the violation of a constitutional right

---

[65] R. Doc. 19 at p. 6 (*citing* R. Doc. 1 at ¶ 41).
[66] R. Doc. 19 at p. 16 (citation omitted).
[67] *Id.*
[68] *Id.* at p. 9.

under the First Amendment, which was clearly established at the time of the alleged violation.[69]  Plaintiff claims that he has alleged that Chief Walker and Mayor Baudier were aware that he spoke against ticket fixing within the department through his refusal to participate, and also spoke to the general public about general matters affecting local policing through the Facebook page that he operated.[70]  Plaintiff asserts that in retaliation for his constitutionally protected speech on the Facebook page, Defendants immediately conspired to terminate him without due process and in violation of state and federal law.  Plaintiff argues that the First Amendment protections of state employees who speak on matters of public concern are clearly established.[71]

Regarding Count III, Plaintiff asserts that defendants "mistakenly assume" that the claim was brought against them in their individual capacities under the Louisiana Whistleblower Act, La. R.S. 23:967.[72]  Although Defendants argue that these claims must be dismissed because Mayor Baudier and Chief Walker are not Plaintiff's employer, Plaintiff argues that, "the jurisprudence holds that both the Mayor and the Chief of Police may be considered employers in their official capacities as the Chief of the Harahan Police Department and Mayor of Harahan."[73]  Relying upon the Public Whistleblower Act, La. R.S. 42:1169(D), and *Ray v. City of Bossier City*, a Louisiana appellate court decision, Plaintiff argues that he was employed by

---

[69] *Id*. at pp. 10-11.
[70] *Id*. at p. 10.
[71] *Id*. at p. 11 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Grady v. El Paso Community College*, 979 F.2d 1111, 1114 (5th Cir. 1992)).
[72] R. Doc. 19 at p. 17.
[73] *Id*.

Chief Walker and Mayor Baudier for the purposes of the Louisiana Whistleblower Act because they had the right of control and supervision over him.[74]

### D. Chief Walker's Reply Brief

In his Reply brief, Chief Walker maintains that Plaintiff has failed to establish any property right which would support his § 1983 claim based on a Fourteenth Amendment violation.[75]  Chief Walker further asserts that there is no legal support for Plaintiff's "entirely unfounded assertion" that a person can create a protectible property interest in a government job if it is "widely known and understood" that the person "would be groomed" for a position.[76]  Alternatively, Chief Walker argues that even if Plaintiff could establish a procedural due process claim, he does not explain why the Court should deviate from the recent, on-point decision by this Court that the proper defendant in a deprivation of due process claim brought against the HPD is the government employer (*i.e.*, the City of Harahan), not a government employee or official (*i.e.* Chief Walker).[77]

Chief Walker further asserts that Plaintiff has failed to allege sufficient facts to show that Chief Walker violated his First Amendment rights and, as such, cannot defeat qualified immunity.[78]  Chief Walker argues that Plaintiff has failed to allege sufficient facts to support an inference that he spoke as a citizen on a matter of public concern as to the Facebook post at issue, claiming that the Facebook post identified

---

[74] *Id.* at pp. 17-19 (citing *Ray*, 37,708 (La. App. 2 Cir. 10/24/03), 859 So.2d 264, 272).
[75] R. Doc. 29.
[76] *Id.* at pp. 2-3.
[77] *Id.* at p. 3 (citing *Wright v. City of Harahan*, Civ. A. No. 19-13529, 2020 WL 815289 (E.D. La. Feb. 19, 2020)).
[78] R. Doc. 29 at p. 4.

Plaintiff as a public employee by stating, "MY ONLY INTENTION with the HPD page is to keep you INFORMED."[79]  Chief Walker maintains that since Plaintiff was a public employee and speaking as a public employee, his employer was entitled to exercise control over the speech.  Chief Walker contends that the Facebook post was nothing more than the rant of a disgruntled employee on issues that were not matters of public concern.[80]  Alternatively, if the Court finds that Plaintiff was speaking as a citizen on matters of public concern, Chief Walker argues that Plaintiff has failed to allege sufficient facts to demonstrate that his interest in the speech outweighs the HPD's interest in "promoting efficiency and integrity."[81]  Finally, Chief Walker asserts that Plaintiff concedes that he has no viable claim under the Louisiana Whistleblower Act, La. R.S. 23:967, and should not be allowed to amend his Complaint through his Opposition brief to add a claim under the Public Whistleblower Act, La. R.S. 42:1169.[82]  Chief Walker further argues that any amendment to the Complaint to assert a claim under La. R. S. 42:1169 would be futile because the jurisprudence makes clear that there is no independent cause of action under La. R.S. 42:1169.[83]

### E. Mayor Baudier and the City of Harahan's Reply Brief

Mayor Baudier and the City of Harahan also filed a Reply brief in which they argue that Plaintiff's Consolidated Opposition makes clear that all of his claims

---

[79] *Id.* at pp. 5-6 (*quoting* R. Doc. 1 at ¶ 30) (internal quotation marks omitted).
[80] R. Doc. 29 at p. 7.
[81] *Id.* (quoting *Lane v. Franks*, 573 U.S. 228, 242, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014)).
[82] R. Doc. 29 at p. 9 (citing *Goodwin v. Hous. Auth. of New Orleans*, Civ. A. No. 11-1397, 2013 WL 3874907, at *9 n.37 (E.D. La. July 25, 2013)).
[83] R. Doc. 29 at pp. 9-10 (citing *Wilson v. Tregre*, 787 F.3d 322, 328 (5th Cir. 2015); *Bowie v. Hodge*, Civ. A. No. 20-2441, 2021 WL 53312 (E.D. La. Jan. 6, 2021)).

against them should be dismissed.[84]   Mayor Baudier and the City reiterate that Plaintiff's Fourteenth Amendment claim must be dismissed because he did not have any property interest in his employment.   Responding to Plaintiff's assertion that Chief Walker "entered into a subsequent employment agreement" with Plaintiff, Mayor Baudier and the City assert that Plaintiff "attempts to circumvent the fatal deficiency in his due process claim by manufacturing a property interest, notwithstanding that his 'employment agreement' claim does not appear <u>anywhere</u> in Plaintiff's Complaint."[85]   Mayor Baudier and the City contend that Plaintiff's vague allegations of some unwritten "employment agreement" do not support an explicit understanding of mutually agreed upon "contractual" terms.[86] Defendants also point out that state law, La. R.S. 33:2570(B)(1), explicitly states that, "the assistant chief of police shall serve indefinitely in the position," meaning that the term is not definite[87]

Mayor Baudier and the City maintain that Plaintiff has failed to identify any policy, let alone one that was the moving force behind his alleged constitutional injury, to support his § 1983 claims brought under the First and Fourteenth Amendments.[88]   Mayor Baudier and the City assert that Plaintiff's reliance on the ticket fixing "policy" is flawed because nothing about such a practice is

---

[84] R. Doc. 30 at p. 1.  To the extent Mayor Baudier and the City of Harahan assert, in a footnote, that, "This Court can dismiss the two claims outside of Defendants' motion *sua sponte*," the Court declines that request.
[85] R. Doc. 30 at p. 2 (emphasis in original).
[86] *Id*. at pp. 3-4 (citing *Collins v. Town of Zwolle*, Civ. A. No. 06-1742, 2007 WL 2377350, *6 (W.D. La. Aug. 10, 2007)).
[87] R. Doc. 30 at p. 4 (*quoting* La. R.S. 33:2570(B)(1)).
[88] R. Doc. 30 at pp. 4-5.

unconstitutional and the "policy" has no plausible connection to Chief Walker's alleged decision to terminate Plaintiff.[89]  Plaintiff has also failed to show that such a policy "existed by virtue of a 'persistent, widespread practice of city officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents municipal policy.'"[90]  Mayor Baudier and the City maintain that Plaintiff's official capacity claims against Mayor Baudier and his individual capacity claims against Mayor Baudier under § 1983 must be dismissed.[91]  Like Chief Walker, Mayor Baudier and the City assert that even if Plaintiff can assert a new claim under the Public Whistleblower Act, La. R.S. 42:1169, the claim fails because the statute does not provide a private right of action.[92]  As such, Mayor Baudier and the City assert that all of Plaintiff's claims against them should be dismissed.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted.[93]  To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[94]  A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[95]  But, no matter the factual

---

[89] R. Doc. 30 at pp. 5-6.

[90] *Id.* at p. 6 (quoting *Mason v. Lafayette City-Parish Consol. Gov't.*, 806 F.3d 268, 280 (5th Cir. 2015)).

[91] R. Doc. 30 at pp. 7-9.

[92] *Id.* at pp. 9-10 (citing *Bagala v. Lafourche Parish Gov't*, Civ. A. No. 18-956, 2019 WL 424672, at *7 (E.D. La. Feb. 4, 2019)).

[93] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[94] *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[95] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

content, a claim is not plausible if it rests on a legal theory that is not cognizable.[96]
In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and
views those facts in the light most favorable to the plaintiff.[97]

However, the allegations must be enough to raise a right to relief above the
speculative level on the assumption that all of the complaint's allegations are true.[98]
"[C]onclusory allegations or legal conclusions masquerading as factual conclusions
will not suffice to prevent a motion to dismiss."[99]  In deciding a Rule 12(b)(6) motion
to dismiss, a court is generally prohibited from considering information outside the
pleadings, but may consider documents outside of the complaint when they are: (1)
attached to the motion; (2) referenced in the complaint; and (3) central to the
plaintiff's claims.[100] The Court can also take judicial notice of matters that are of
public record, including pleadings that have been filed in a federal or state court.[101]

## III.   ANALYSIS

As a threshold matter, the Court addresses its subject matter jurisdiction in
this case.  Plaintiff has asserted claims under 42 U.S.C. § 1983, the First and
Fourteenth Amendment, and Louisiana state law.  Since Plaintiff's claims arise
under federal law, the Court has original jurisdiction under 28 U.S.C. §§ 1331 and

---

[96] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam).
[97] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[98] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[99] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[100] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[101] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

1343, and may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Further, on August 2, 2021, the parties filed a Joint Stipulation of Dismissal With Prejudice, dismissing with prejudice all of Plaintiff's claims against Mayor Baudier and dismissing with prejudice Plaintiff's official capacity claims against Chief Walker.[102] As such, Chief's Walker's Motion to Dismiss is denied as moot to the extent he seeks dismissal of the official capacity claims brought against him. Mayor Baudier and the City of Harahan's Motion to Dismiss is likewise denied as moot to the extent they sought dismissal of all of Plaintiff's claims against Mayor Baudier. As a result of the partial dismissal, the Court will only address the remaining claims addressed in the Motions to Dismiss.

**A. Plaintiff's Individual Capacity Claims Against Chief Walker**

**1. Count I: Plaintiff's 42 U.S.C. § 1983 Claim Based Upon the Alleged Violation of his Due Process Rights Under the Fourteenth Amendment, La. R.S. 33:2570(B)(2), and La. R.S. 40:2531(C).**

In Count I of the Complaint, Plaintiff seeks damages under 42 U.S.C. § 1983 based upon the alleged violation by Chief Walker and Mayor Baudier of his Fourteenth Amendment rights to due process, as well as his due process rights under La. R.S. 33:2570(B)(2) and the Louisiana Police Officers' Bill of Rights, La. R.S. 40:2531(C).[103] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

[102] R. Doc. 61.
[103] R. Doc. 1.

> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.  For the purposes of this section,
> any Act of Congress applicable exclusively to the District of Columbia
> shall be considered to be a statute of the District of Columbia.

To state a viable § 1983 claim, a plaintiff must allege: (1) the violation of a constitutional right; and (2) that the violation was committed by a person acting under color of state law.[104]

Under Fifth Circuit jurisprudence, "To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake."[105]  The Fifth Circuit has clarified that such a showing "must be made by reference to state law."[106]  According to the Fifth Circuit, "In Louisiana a person acquires a protectable property interest in a government job only if the contract has a 'for cause' clause, or if the employee is classified under the state civil service system . . .."[107]

Here, Plaintiff alleges that the Defendants violated his due property rights by terminating his employment without providing him pre-termination notice or opportunity to be heard.  Plaintiff asserts that such actions are unconstitutional because he has a property interest in his continued employment as assistant chief of police of HPD under La. R.S. 33:2570(B)(2) and La. R. S. 40:2531(C).  The first statute,

---

[104] *Rowley v. Tchefuncta Club Estates, Inc.*, 151 Fed.Appx. 349, 350 (5th Cir. 2005) (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)) (internal quotation marks omitted).
[105] *Lollar v. Baker,* 196 F.3d 603, 607 (5th Cir.1999).
[106] *Id.* (citing *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987)).
[107] *Vanderwall v. Peck*, 129 Fed.Appx. 89, 91 (5th Cir. 2005) (citing *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996); *Pope v. New Orleans City Park*, 95-1634 (La. App. 1 Cir. 4/4/96), 672 So.2d. 388, 389-90).

La. R.S. 33:2570(B)(2), which is directed to assistant chiefs of police for the City of

Harahan, provides:

> If any such person is demoted as the result of such evaluation, or
> otherwise vacates the position on the approval of the chief of police, he
> shall be demoted to a position in the class he held immediately preceding
> his appointment as assistant chief of police.  If an assistant chief of police
> is subjected to corrective or disciplinary action, he shall have the same
> rights as any other employee in the municipal fire and police civil
> service.

Relying on this provision, Plaintiff alleges that "he had the same employment rights

as any other employee in the municipal fire and police civil service; therefore, he was

entitled to notice and an opportunity to be heard before being deprived of his

employment."[108]  Defendants point out that Plaintiff's position ignores Section A of

the statute, which states, "Notwithstanding the provisions of R.S. 33:2541 or any

other provision of law to the contrary, the position of assistant chief of police of

Harahan is in the *unclassified* service.  The right of selection, appointment,

supervision, and discharge for the position is vested in the chief of police of the

city."[109]  Since the law is clear that the assistant chief of police is in the unclassified

service, defendants assert that Plaintiff has failed to enunciate any valid property

interest in his employment.

Plaintiff also relies on La. R.S. 40:2531(C) to establish a property interest in

his employment.  That statute provides:

> There shall be no discipline, demotion, dismissal, or adverse action of
> any sort taken against a police employee or law enforcement officer
> unless the investigation is conducted in accordance with the minimum
> standards provided for in this Section.  Any discipline, demotion,

---

[108] R. Doc. 1, ¶ 34.
[109] La. R.S. 33:2570(A) (emphasis added).

dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.[110]

Plaintiff avers that, under this provision, he "was entitled to a number of procedural safeguards" before any adverse employment action could be taken against him.[111] Chief Walker asserts that this statute does not create a property interest in Plaintiff's employment, and directs the Court to a case from the Western District of Louisiana that expressly rejected that argument.[112]  Chief Walker further asserts that La. R.S. 40:2531 only applies to employees "who are under investigation," and Plaintiff specifically alleges that he was never the subject of an investigation.[113]

The Court finds that Plaintiff has not met his burden of showing that he had a legally recognized property interest in his continued employment as assistant police chief of HPD under either La. R.S. 33:2570(B)(2) or La. R.S. 40:2531(C).  Specifically, the Court finds that Plaintiff has not alleged in the Complaint that he had an employment contract for a definite term, much less that he had an employment contract with a "no cause" termination clause.  Plaintiff has likewise failed to allege sufficient facts to show that he was a permanent classified employee under the Louisiana civil service system.[114]  The Court agrees with Chief Walker that Plaintiff's reliance on La. R.S. 33:2570(B)(2) to establish a property interest completely

---

[110] La. R.S. 40:2531(C).
[111] R. Doc. 1 at ¶ 35.
[112] R. Doc. 5-1 at p. 6 (citing *Madison v. City of Patterson*, Civ. A. No. 18-0175, 2018 WL 4624185, at *8 (W.D. La. Sep. 26, 2018)).
[113] R. Doc. 5-1 at p. 7 (citing *State v. Jones*, 2019-1285 (La. App. 1 Cir. 5/11/20), 2020 WL 2393794).
[114] *Vanderwall v. Peck*, 129 Fed.Appx. 89, 91 (5th Cir. 2005) (citing *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996); *Pope v. New Orleans City Park*, 95-1634 (La. App. 1 Cir. 4/4/96), 672 So.2d. 388, 389-90).

disregards the language of La. R.S. 33:2570(A), which clearly states that Plaintiff's position as an assistant chief of police of the City of Harahan "is in the unclassified service."[115]

The Court also finds that La. R.S. 40:2531(C) does not create a property right in Plaintiff's continued employment as assistant police chief of HPD. On this issue, the Court finds the Fifth Circuit's reasoning in *Cobb v. City of Harahan* instructive and applicable.[116] There, the Fifth Circuit considered whether a plaintiff's reliance on the Lawrason Act, La. R.S. 33:404, was sufficient to establish a property right in employment. The Lawrason Act provides that, "appointment or removal of . . . any department head shall be subject to approval by the board of aldermen."[117] The plaintiff had argued that he was a department head, as contemplated by the Lawrason Act, and that the statutory restriction on his termination gave rise to a property interest protected by the Fourteenth Amendment's Due Process clause.[118] The Fifth Circuit rejected that argument, concluding that, "The Lawrason Act says nothing about *why* [Cobb's] employment may be terminated; it only specifies *how* [Cobb's] employment may be terminated. An ordinance 'merely conditioning an employee's removal on compliance with certain specified procedures' does not endow that employee with a property interest in his employment."[119] The same reasoning applies to this case, where Plaintiff is relying on the Police Officers' Bill of Rights, La.

---

[115] La. R.S. 33:2570(A).
[116] 516 Fed.Appx. 337 (5th Cir. 2013).
[117] *Id*. at 338 (*quoting* La. R.S. 33:404(A)(3)) (internal quotation marks omitted).
[118] *Cobb*, 516 Fed.Appx. at 338-39.
[119] *Id*. at 340 (citing *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

R.S. 40:2531, as creating a property right in his employment. As such, the Court finds that Plaintiff has failed to establish a property interest in his continued employment as assistant police chief of HPD, as required to support his Fourteenth Amendment claim in Count I of the Complaint.

For the foregoing reasons, Plaintiff's § 1983 claim against Chief Walker based upon a Fourteenth Amendment violation must be dismissed.

## 2. Count II: Plaintiff's First Amendment Claim.

In Count II of the Complaint, Plaintiff asserts a First Amendment retaliation claim against Chief Walker and Mayor Baudier, alleging that they "acted together" to violate his First Amendment Rights when they terminated him for exercising his right to publish his personal opinions on general matters of local public safety on the Facebook page at issue.[120] Plaintiff also asserts that by doing so, they acted for the City of Harahan.[121] Chief Walker contends that he is entitled to qualified immunity from the First Amendment claim.

"When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity. The plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"[122] The Fifth Circuit has held that, "Although public employees do not wholly relinquish their free

---

[120] R. Doc. 1 at ¶ 42.
[121] *Id.* at ¶ 43.
[122] *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019) (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) and quoting *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013)).

speech rights by virtue of accepting governmental employment, the First Amendment nonetheless permits government employers to exercise a degree of control over their employees' words and actions."[123]   To establish a *prima facie* case for First Amendment retaliation, a public employee must show that:

> (1) He suffered an adverse employment action;
> (2) He spoke as a citizen, rather than pursuant to his official job duties;
> (3) He spoke on a matter of public concern;
> (4) His interest in the speech outweighed the government's interest in the efficient provision of public services; and
> (5) His speech precipitated the adverse employment action.[124]

At issue in this case are the second, third, and fourth factors.

As to the second factor, the Supreme Court has held that*,* "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[125]  The Fifth Circuit has further clarified that, "Under *Garcetti,* we must shift our focus from the content of the speech to the role the speaker occupied when he said it."[126]  Further, complaints made by public employees "up the chain of command" at their workplace about job duties normally fall outside of First Amendment protection.[127]  The Fifth Circuit has cautioned that, "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his

---

[123] *Hardesty v. Cochran,* 621 Fed.Appx. 771, 775 (5th Cir. 2015) (citing *Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015)).
[124] *Hardesty,* 621 Fed.Appx. at 775-76 (citing *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)).
[125] *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006).
[126] *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 692 (5th Cir. 2007) (citing *Garcetti*, 547 U.S. 410, 126 S.Ct. 1951).
[127] *Davis v. McKinney*, 518 F.3d 304, 313 & n.3 (5th Cir. 2008) (citing authority).

workplace, then those external communications are ordinarily not made as an employee, but as a citizen."[128]  In analyzing the third factor, "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."[129]  According to the Supreme Court, "Speech involves matters of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."'"[130]

Plaintiff claims that he had set up, managed, and maintained the official HPD Facebook page since 2013 and that, during the meeting held on June 26, 2020, he advised that he "would remove all official indicia from the Facebook page, but that his reformatted page would continue as a source of public information on local law enforcement in general."[131]  Plaintiff asserts that later that same day, he took down all the official indicia of the HPD from the Facebook page and changed its name to "Local Police Matters."[132]  The following day, Plaintiff published the Facebook post at issue.  Chief Walker asserts that the post establishes that Plaintiff was speaking as a public employee because he wrote that, "My ONY [sic] INTENTION with the HPD page is to keep you INFORMED"[133] Thus, despite the name change, Chief Walker

---

[128] *Id*. at 313 (citing *Freitag v. Ayers,* 468 F.3d 528 (9th Cir. 2006)).
[129] *Goudeau v. East Baton Rouge Parish Sch. Bd*., 540 Fed.Appx. 429, 434 (5th Cir. 2013) (quoting *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008)) (internal quotation marks omitted).
[130] *Lane v. Franks*, 573 U.S. 228, 241, 134 S. Ct. 2369, 2380, 189 L.Ed.2d 312 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 131. S.Ct. 1207, 1216, 179 L.Ed.2d 172 (2011)).
[131] R. Doc. 1 at ¶ 26.
[132] *Id*.
[133] R. Doc. 5-1 at p. 10 (*quoting* R. Doc. 1 at ¶ 30).

asserts that Plaintiff continued to represent that he was keeping people informed via "the HPD page."[134]

But saying it is so doesn't make it so.  The Court finds that the facts alleged in the Complaint do not support that Plaintiff was speaking within the scope of his duties when he published the Facebook post.  Instead, Plaintiff alleges that he was advised that he could not speak as a public official on the Facebook page and that he had agreed not to do so.[135]  Therefore, the Court finds that Plaintiff was speaking as a private citizen when he made the Facebook post at issue.  That finding, however, does not end the inquiry.

The Court must next determine whether Plaintiff spoke on a matter of public concern in the Facebook post.  Chief Walker argues that Plaintiff's speech "clearly relates to his personal disagreement with the request that his personally-operated Facebook page not imply to the public that the Harahan Police Department endorsed his views."[136]  The Fifth Circuit has held that the inclusion of issues of private concern does not render speech unprotected, but renders it "mixed speech."[137]  In determining whether a speaker's "mixed speech" relates to a matter of public concern, the Fifth Circuit considers the content, context, and form of the speech and evaluates whether the speech "'inform[s] the populace of more than the fact of an employee's employment

---

[134] R. Doc. 5-1 at p. 10.

[135] R. Doc. 1 at ¶ 26.

[136] R. Doc. 5-1 at p. 10.

[137] *Goudeau v. East Baton Rouge Parish Sc. Bd.*, 540 Fed.Appx. 429, 435 (5th Cir. 2013) (citing *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005)).

grievance,' is 'made against the backdrop of public debate,' and is not simply made 'in furtherance of a personal employer-employee dispute.'"[138]

Applying those principles to the facts of this case, the Court finds that Plaintiff's Facebook post does not relate to a matter of public concern and, instead, centers around Plaintiff's grievance with the HPD.  Regarding the context and form of the speech at issue, Plaintiff's Facebook post followed on the heels of a private meeting in which Plaintiff voiced a grievance regarding the alleged ticket-fixing within HPD and took the form of a social media post.  Plaintiff contends that in the Facebook post he spoke out against "abuse of police power" to the general public.[139] The Facebook post, however, does not support Plaintiff's contention.  There is nothing in the Complaint to support that the Facebook post was made against a backdrop of a public debate on ticket fixing (or police corruption, or anything else).  Instead, viewing the content, context, and form of the speech, the Court finds that the speech fails to inform the public of anything more than a personal grievance between Plaintiff and HPD.  Thus, the Court finds that the Facebook post does not constitute speech protected by the First Amendment because it does not involve speech on a matter of public concern.  Accordingly, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiff, as the Court is required to do, the Court finds that Plaintiff has failed to assert a plausible First Amendment retaliation claim against Chief Walker.

---

[138] *Goudeau*, 540 Fed.Appx. at 435 (quoting *Salge*, 411 F.3d at 187-88).
[139] R. Doc. 19 at p. 6 (*citing* R. Doc. 1 at ¶ 27).

### 3. Count III: Plaintiff's Claims under the Louisiana Whistleblower Act, La. R.S. 23:967.

In Count III of the Complaint, Plaintiff alleges that Chief Walker and Mayor Baudier, acting for the City of Harahan, terminated Plaintiff for objecting to the practice of ticket fixing at the HPD, and for refusing to participate in the practice, in violation of the Louisiana Whistleblower Act, La. R.S. 23:967.[140]   That statute provides that:

> A. *An employer* shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
>
> B. An employee may commence a civil action in a district court where the violation occurred *against any employer* who engages in a practice prohibited by Subsection A of this Section.  If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.[141]

The Louisiana Whistleblower Act "provides certain protections to employees who threaten to disclose an employer's illegal activity," and, "The substantive section contained in Paragraph A of the statute prohibits reprisal by an *employer* . . . ."[142]

---

[140] R. Doc. 1 at ¶¶ 44-45.
[141] La. R.S. 23:967(A) & (B) (emphasis added).
[142] *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014) (emphasis added); *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 702 (E.D. La. 2013).

Plaintiff does not allege in the Complaint that Chief Walker or Mayor Baudier were his employer.[143]   Instead, Plaintiff specifically alleged that, "Plaintiff was formerly employed by the City of Harahan Police Department ('HPD') as Assistant Chief of Harahan Police Department."[144]   In his Opposition brief, however, Plaintiff argues that, "Plaintiff was a police officer employed by Chief Walker and Mayor Baudier for the purposes of the *Public Whistle Blower Statute*," based upon the fact that they both had the power to control and supervise Plaintiff's work.[145]   As Plaintiff points out, that statute, La. R.S. 42:1169, specifically provides that, "Any employer with the authority to hire, fire, or discipline employees, supervisor, agency head, or elected official who violates this Section shall be subject to the same fines and penalties provided for other violations of this Chapter."[146]   The statute cited by Plaintiff in his Complaint, La. R.S. 23:967, does not contain a similar provision.   As such, Plaintiff's argument, which addresses a *different statute*, offers no factual support for Plaintiff's claim under La. R.S. 23:967, or his contention that Chief Walker can be considered his employer.   Accordingly, Plaintiff has failed to state a plausible claim against Chief Walker under the Louisiana Whistleblower Act, La. R.S. 23:967.   The claim must be dismissed.

---

[143] *See, generally,* R. Doc. 1.
[144] R. Doc. 1 at ¶ 8.
[145] R. Doc. 19 at pp. 17-18 (*citing* La. R.S. 42:1169; *Ray v. Bossier City*, 37,708 (La. App. 2 Cir. 10/24/03), 859 So.2d 264, 272) (emphasis added).
[146] R. Doc. 19 at p. 17 (*quoting* La. R.S. 42:1169(D)) (quotation marks omitted).

### B. Plaintiff's Claims Against the City of Harahan

### 1. Count I: Plaintiff's § 1983 Claim Based Upon the Alleged Violation of his Due Process Rights Under the Fourteenth Amendment, La. R.S. 33:2570(B)(2), and La. R.S. 40:2531(C).

The Fifth Circuit has held that, "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible."[147]  "It is well established that a city is not liable under § 1983 on the theory of respondeat superior."[148]  According to the Fifth Circuit, "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'"[149]  Thus, a plaintiff must identify: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom.[150]  The Fifth Circuit has defined "official policy" to mean:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so

---

[147] *Goudeau v. East Baton Rouge Parish Sch. Bd.*, 540 Fed.Appx. 429, 437-38 (5th Cir. 2013) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998)) (internal quotation marks omitted).

[148] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[149] *Valle*, 613 F.3d at 541 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

[150] *Valle*, 613 F.3d at 542 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

common and well settled as to constitute a custom that fairly represents municipal policy.[151]

"Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."[152]  According to the Supreme Court, "Official municipal policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[153]

In the Complaint, Plaintiff alleges that, "Both Walker and Baudier were the primary policymakers of the police and municipal matters, respectively, in the City of Harahan," and that the decision to terminate Plaintiff, adopted and promulgated by Chief Walker and Mayor Baudier, deprived Plaintiff of his constitutionally protected property right.[154]  Yet the Complaint is silent as to what specific policy Chief Walker and Mayor Baudier allegedly violated.  In his Opposition brief, Plaintiff alleges that the policy he is relying on is "the policy and practice of fixing traffic tickets in the City Court of Harahan, or acquiescing in the fixing of such tickets," which "came directly from the policymakers."[155]  Although Plaintiff cites Paragraph 41 of the Complaint in support of this assertion, Paragraph 41 does not mention any ticket fixing.  The Court further finds that the Complaint is silent as to any enunciation of such a policy, nor any pattern of fixing tickets.  Instead, the Complaint

---

[151] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).
[152] *Mason*, 806 F.3d at 280 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc)) (internal quotation marks omitted).
[153] *Connick v. Thompson,* 563 U.S. 51, 60, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citing authority).
[154] R. Doc. 1 at ¶ 41.
[155] R. Doc. 19 at p. 6 (*citing* R. Doc. 1 at ¶ 41).

references only one instance of ticket fixing – "the ticket issued to [Phil] Ramon" on October 4, 2019.[156]  Additionally, the Complaint specifies that Plaintiff requested a meeting to discuss "the Ramon ticket fixing problem," again, seemingly referring to one instance which had occurred some nine months earlier.[157]

Accepting the facts as alleged as true, and even taking the leap that the "Ramon ticket fixing problem" is the alleged policy at issue, the Court finds that Plaintiff has failed to identify an official policy or custom of the City of Harahan that caused a deprivation of rights.  As stated by the Fifth Circuit, isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.[158]  Having found that the Plaintiff has failed to enunciate any specific official policy or custom, the Court need not continue its analysis of the remaining factors necessary to establish municipal liability under § 1983.  Based on the foregoing analysis, the Court finds that Plaintiff has failed to state a viable § 1983 claim against the City of Harahan and that the claim must be dismissed.[159]

## IV.   LEAVE TO AMEND

In his Opposition brief, Plaintiff requests leave to amend his Complaint under Fed. R. Civ. P. 15(a) if the Court determines that the Complaint contains any deficiencies.[160]  While the Court will "freely give leave [to amend] when justice so

---

[156] R. Doc. 1 at ¶¶ 20-24.
[157] *Id.* at ¶ 27.
[158] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).
[159] As set forth in the Motion to Dismiss filed by Mayor Baudier and the City of Harahan, Plaintiff's First Amendment retaliation and Louisiana Whistleblower Act claims remain pending against the City of Harahan.  R. Doc. 6-2 at p. 1.
[160] R. Doc. 19 at p. 2.

requires,"[161] leave to amend "is by no means automatic."[162]   In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[163]   However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[164]   The Fifth Circuit has stated that while it has not specifically defined "futility" in this context, "we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted."[165]

The Court finds that there is no indication of bad faith or dilatory motive on Plaintiff's part.   Thus, the Court addresses leave to amend on three fronts—undue delay, undue prejudice, and futility of amendments.   While the Court does not suggest dilatory motive, it does question Plaintiff's delay in waiting to file a motion for leave to amend until July 22, 2021, eight months after Defendants filed their Motions to Dismiss.[166]   The Court further notes that it has held three status conferences with counsel after the Motions to Dismiss were filed,[167] the most recent being only three weeks before Plaintiff moved to amend his Complaint.[168]   The Court would be remiss

---

[161] Fed. R. Civ. P. 15(a).

[162] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[163] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[164] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[165] *Id.*

[166] R. Doc. 57.  Plaintiff's First Motion to Amend Complaint remains pending and will not be submitted until August 11, 2021.

[167] R. Docs. 18, 23, & 46.

[168] *See*, R. Docs. 46 & 57.

not to point out that the most recent status conference was held at Plaintiff's counsel's request to discuss amending the Scheduling Order to allow for a continuance of discovery, trial, and the pretrial conference in this matter.[169]  Counsel did not inform the Court during that conference that he would be seeking to amend the Complaint, despite the fact that the Court discussed with counsel the pending Motions to Dismiss.  In light of these facts, the Court finds that allowing Plaintiff to amend the Complaint at this late date would cause undue delay in this case, both to Defendants and the Court, which weighs against granting Plaintiff leave to amend.

The Court next addresses any undue prejudice to Defendants if Plaintiff is granted leave to amend.  A Scheduling Order has been in effect since December 2020, pursuant to which discovery has been exchanged and depositions have been taken.[170] Further, the discovery deadline has now passed.[171]  While the Court recognizes that granting both Motions to Dismiss will leave two claims pending against the City of Harahan, the Court also acknowledges that granting leave to amend will likely result in a motion to re-open discovery.   As such, the Court finds that allowing an amendment will result in significant undue prejudice to Chief Walker and the City of Harahan, both in time and costs.

The Court does not end its inquiry there.  The Court must also consider the futility of any amendment by Plaintiff.  Plaintiff is silent in the Opposition brief as to what additional facts he could or would plead to assert a plausible claim under Count

---

[169] *See*, R. Docs. 45 & 46.
[170] R. Doc. 11.  *See also*, R. Docs. 12, 36, 37, 38, 47, 56.
[171] R. Doc. 47.  The discovery deadline was extended upon the oral motion of Plaintiff's counsel during the June 30, 2021 Telephone Status Conference.  R. Doc. 46.

I, his §1983 claim based upon violations of his due process rights under the Fourteenth Amendment, La. R.S. 33:2570(B)(2), and the Louisiana Police Officers' Bill of Rights, La. R.S. 40:2351(C).  Since the Court has found that Plaintiff has no property right in his continued employment as the assistant police chief of HPD under either La. R.S. 33:2570(B)(2) or La. R.S. 40:2351(C), the Court finds that allowing Plaintiff an opportunity to amend the Complaint to include facts to support a § 1983 claim under those statutes would be futile.

The Court further finds that it would be futile to allow Plaintiff to amend his claim alleging a violation of the Louisiana Whistleblower Act, La. R.S. 23:967, against Chief Walker, as the Court has determined that that statute only applies to employers and not to individuals.  No curative amendment can transform Chief Walker into Plaintiff's employer.  In his Opposition brief Plaintiff, for the first time, alleges a violation of La. R.S. 42:1169, which Plaintiff terms the "Public Whistleblower Act."[172]  While Plaintiff asserts that Defendants "mistakenly assume" that his whistleblower claim was brought under the "Private Whistleblower Act," La. R.S. 23:967, the Complaint shows that this was not a case of a mistaken assumption. While the Introductory Paragraph of the Complaint mentions "the Louisiana Public Whistleblower Statute," the Complaint references La. R.S. 23:967 both by name and by statute number at least three times.[173]  In his Opposition brief, Plaintiff asserts that his claims in Count II arise under La. R.S. 42:1169.  The question, then, is whether Plaintiff should be allowed an opportunity to amend his Complaint to allege

---

[172] R. Doc. 19 at pp. 7, 17-19.
[173] R. Doc. 1 at Introductory Paragraph & ¶¶ 1, 2, 44.

a violation of La. R.S. 42:1169 against Chief Walker and the City of Harahan, or if such an amendment would be futile. The Court finds that such an amendment would be futile, as the Fifth Circuit has held that La. R.S. 42:1169 does not provide a private right of action for a plaintiff to sue in state or federal court.[174]

Based on the foregoing, the Court, exercising its discretion under Fed. R. Civ. P. 15, declines Plaintiff's request to amend his Complaint.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6),[175] filed by Robert "Tim" Walker, is **GRANTED in part** and **DENIED in part as moot.** The Motion is **GRANTED** to the extent that Chief Walker seeks dismissal of the individual capacity claims asserted against him in Counts I, II, and III of the Complaint, which claims are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED as moot** to the extent that Chief Walker seeks dismissal of the official capacity claims asserted against him in Counts I, II, and III of the Complaint, which have been dismissed with prejudice.[176]

**IT IS FURTHER ORDERED** that the Motion to Dismiss, filed by Timothy Baudier and the City of Harahan,[177] is **GRANTED in part** and **DENIED in part as moot.** The Motion is **GRANTED** to the extent that the defendants seek dismissal of the claim asserted against the City of Harahan in Count I of the Complaint, which is

---

[174] *Wilson v. Tregre*, 787 F.3d 322, 328 (5th Cir. 2015) (citing *Collins v. State ex rel. Dep't of Natural Res.*, 2012–1031, p. 6–7 (La. App. 1 Cir. 5/30/13); 118 So.3d 43, 47–48).
[175] R. Doc. 5.
[176] R. Doc. 61.
[177] R. Doc. 6.

**DISMISSED WITH PREJUDICE.** The Motion is **DENIED as moot** to the extent that the defendants seek dismissal of all of the claims asserted against Mayor Baudier, which have been dismissed with prejudice.[178]

New Orleans, Louisiana, August 4, 2021.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[178] R. Doc. 61.