**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEITH MOODY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2656-WBV-DMD** |
| **ROBERT WALKER, ET AL.** | **SECTION: D (4)** |

**ORDER AND REASONS**

Before the Court is a Motion for Summary Judgment, filed by defendant, the City of Harahan (the "City").[1] Plaintiff, Keith Moody, opposes the Motion,[2] and the City has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[4]

This matter arises out of Plaintiff's termination from his employment as Assistant Chief of the Harahan Police Department ("HPD") on June 29, 2020. Plaintiff alleges that in June 2020, he spoke privately to Police Chief Robert Tim Walker and requested a meeting with Chief Walker and Mayor Timothy Baudier to discuss alleged ticket fixing.[5] Specifically, Plaintiff wanted to discuss a traffic ticket issued to local politician, Phil Ramon, on October 4, 2019, which "Plaintiff could no

---

[1] R. Doc. 67.
[2] R. Doc. 78.
[3] R. Doc. 88.
[4] The factual and procedural history of this case is set forth in great detail in the Court's August 5, 2021 Order and Reasons (R. Doc. 64). For the sake of brevity, the Court will only address the factual and procedural history pertinent to the instant Motion.
[5] R. Doc. 1 at ¶ 24.

longer locate" in the HPD automated reporting management system a month after the violation.[6] The meeting was held on June 26, 2020 in Mayor Baudier's office, and was attended by Chief Walker, Mayor Baudier, City Attorney Scott Stansbury, Councilman Jason Asbill and Councilman Eric Chatelain.[7] Plaintiff alleges that the parties discussed the HPD Facebook page, which Plaintiff had set up, managed and controlled since October 2013 with the permission of former Chief of HPD, Jacob Dickenson, and Chief Walker.[8] Plaintiff asserts that City Attorney Stansbury and Councilman Asbill "expressed strong disapproval of the HPD Facebook Page being privately set up, managed, and controlled by a private citizen."[9] In response, Plaintiff advised that he would remove all official indicia from the Facebook page, but that the reformatted page would continue as a "source of public information on local law enforcement in general."[10]

Plaintiff alleges that he then moved the discussion to the ticket fixing problem at the HPD, and pleaded to everyone not to fix tickets because the practice was causing morale issues with the traffic police officers and public perceptions of impropriety.[11] Plaintiff excused himself from the meeting after he was finished, but Chief Walker remained behind and advised Plaintiff that he had other matters to discuss with the parties present.[12] Later that same day, Plaintiff removed all official indicia of the HPD from the Facebook page and changed its name to "Local Police

---

[6] *Id.* at ¶¶ 20, 23, & 24.
[7] *Id.* at ¶ 25.
[8] *Id.* at ¶ 26.
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶ 27.
[12] *Id.* at ¶ 28.

Matters."[13] Plaintiff alleges that on the following day, June 27, 2020, he posted the following statement on the "Local Police Matters" Facebook page:

> [...] Please, know, ALTHOUGH what we post may be offensive to a few politicians, criminals, or snowflakes, WE THE PEOPLE will ALWAYS fight to protect and defend the constitution against ALL enemies, foreign and DOMESTIC! My ONY [sic] INTENTION with the HPD page is to keep you INFORMED. I will continue to fight suppression, oppression and be TRANSPARENT to our community concerning safety and criminal activities. Thank you all for the texts, calls, emails and messages concerning OUR (your Police) page [...].[14]

Plaintiff alleges that on Monday, June 29, 2020, Chief Walker entered Plaintiff's office and terminated Plaintiff without explanation.[15]

On September 30, 2020, Plaintiff filed a Complaint in this Court against Chief Walker, in his official and individual capacities, Mayor Baudier, in his official and individual capacities, and the City of Harahan (the "City"), based upon his unlawful termination.[16] Plaintiff asserts three distinct claims against the three defendants in the Complaint. In Count I, Plaintiff asserts a 42 U.S.C. § 1983 claim based upon a violation of his due process rights under the Fourteenth Amendment of the United States Constitution and under La. R.S. 33:2570(B)(2) and the Louisiana Police Officers' Bill of Rights, La. R.S. 40:2351(C).[17] In Count II, Plaintiff asserts a First Amendment retaliation claim based upon his termination immediately after exercising "his first Amendment free-speech right to publish a [sic] his personal

---

[13] *Id.* at ¶ 30.
[14] *Id.*
[15] *Id.* at ¶¶ 32-33.
[16] R. Doc. 1.
[17] *Id.* at ¶¶ 34-41.

opinions on general matters of local public safety on the Facebook page."[18] Finally, in Count III, Plaintiff asserts that the defendants violated the Louisiana Whistleblower Act, La. R.S. 23:967, by terminating Plaintiff for objecting to the practice of ticket fixing at the HPD and for refusing to participate in the illegal practice.[19]

On August 2, 2021, the parties filed a Joint Stipulation of Dismissal With Prejudice, dismissing with prejudice all of Plaintiff's claims against Mayor Baudier and dismissing with prejudice Plaintiff's official capacity claims against Chief Walker.[20] On August 5, 2021, the Court issued an Order and Reasons, granting in part and denying in part, as moot, a motion to dismiss filed by Chief Walker and a motion to dismiss filed by Mayor Baudier and the City.[21] The Court dismissed with prejudice all of Plaintiff's individual capacity claims against Chief Walker, and dismissed with prejudice Plaintiff's § 1983 claim against the City.[22] Thus, the only remaining claims in this litigation are Plaintiff's First Amendment retaliation and Louisiana Whistleblower Act ("LWA") claims against the City.

The City filed the instant Motion for Summary Judgment on August 12, 2021, seeking a dismissal, with prejudice, of the two remaining claims against it.[23] The City asserts that it is entitled to summary judgment on Plaintiff's First Amendment retaliation claim because the Court already determined in its August 5, 2021 Order

---

[18] *Id.* at ¶ 42.
[19] *Id.* at ¶ 45. The City did not seek dismissal of Plaintiff's First Amendment retaliation or Louisiana Whistleblower Act claims in its Motion to Dismiss. *See*, R. Doc. 6.
[20] R. Doc. 61.
[21] R. Doc. 64. *See*, R. Docs. 5 & 6.
[22] R. Doc. 64 at pp. 23-25, 28-29, 31, 33-34, 38-39.
[23] R. Doc. 67.

and Reasons that the Complaint fails to assert a plausible cause of action for First Amendment retaliation.[24] The City further asserts that it is entitled to summary judgment on Plaintiff's LWA claim because Plaintiff lacks any evidence to support the elements of the claim.[25] Specifically, the City claims that Plaintiff has no evidence that the City actually violated any Louisiana law through a prohibited workplace act or practice or that Plaintiff advised the City of the violation.[26] The City further asserts that Chief Walker terminated Plaintiff because Plaintiff gave sworn testimony seven days earlier, on June 22, 2020, during a civil service appeal for another police officer, Manual Adams, Jr., stating that he had previously been arrested for murder, manslaughter, and other criminal offenses, none of which was previously disclosed to Chief Walker.[27] The City points out that Plaintiff subsequently admitted that his testimony at the civil service appeal was "terribly unprofessional," Plaintiff facetiously referred to it as a "stunning performance," and Plaintiff later admitted that he "lost it" at the hearing.[28]

Plaintiff asserts that the Motion should be denied because he "has much more evidence to support his claims at this stage of the litigation than he had last year at the Rule 13(b)(6) [sic] Motion to Dismiss Stage [sic]."[29] Plaintiff claims that summary judgment is not warranted on his First Amendment retaliation claim because his Facebook postings were a matter of public concern, as he was keeping the public

---

[24] R. Doc. 67 at p. 1; R. Doc. 67-1 at pp. 1, 6-8.
[25] R. Doc. 67 at p. 1; R. Doc. 67-1 at pp. 1, 9-14.
[26] R. Doc. 67 at p. 1; R. Doc. 67-1 at pp. 1, 10-13.
[27] R. Doc. 67-1 at p. 2 (*citing* R. Doc. 67-5 at p. 1).
[28] R. Doc. 67-1 at p. 3 (*quoting* R. Doc. 67-4 at pp. 4-5, 47) (internal quotation marks omitted).
[29] R. Doc. 78 at p. 1.

aware of accidents arrests and crimes in Harahan.[30] Plaintiff also asserts that the City violated the LWA "because Moody complained of ticket fixing."[31] Plaintiff claims that he "has some evidence of ticket fixing," including Chief Walker "taking care of" a ticket for his waitress at Bobby's Seafood.[32] Plaintiff further asserts that Chief Walker never gave him a reason for his termination, and that there was no mention of the civil service appeal during his June 26, 2020 meeting with Chief Walker.[33] Plaintiff emphasizes that he apologized for his testimony during the civil service appeal and heard nothing more about it until six months later, at his Unemployment Benefits hearing, where there was a determination of no legal misconduct on his part and that he qualified for his unemployment.[34] Plaintiff also claims that Chief Walker was a personal friend for more than 20 years, and knew everything about his personal and professional life.[35] Plaintiff maintains that his Facebook post concerned matters of public concern based, at least in part, on the fact that he had not yet been terminated.[36] Plaintiff does not address the City's arguments regarding his LWA claim.

In response, the City points out that, while Plaintiff contends the Court's prior finding that his Facebook post did not constitute speech on a matter of public concern

---

[30] *Id*. at p. 4.
[31] *Id*.
[32] *Id*. at pp. 5-6 (*citing* R. Docs. 78-3, 78-11, & 78-12).
[33] R. Doc. 78 at p. 6.
[34] *Id*. at pp. 6-7.
[35] *Id*. at p. 7.
[36] *Id*. at p. 8. Plaintiff also asserts that summary judgment is not warranted because his termination was illegal under La. R.S. 33:2570, which provides certain rights before the assistant chief of police for Harahan is disciplined. R. Doc. 78 at p. 3. Such arguments concern Plaintiff's § 1983 claim, which was previously dismissed in this Court's August 5, 2021 Order and Reasons. *See*, R. Doc. 64.

somehow no longer applies because discovery has been conducted, Plaintiff does not cite any discovery or evidence that bolsters his argument.[37] The City claims that Plaintiff merely reasserts the same arguments that the Court previously rejected in its August 5, 2021 Order. The City reiterates that there is no evidence that Plaintiff was terminated for any reason other than his "stunning performance" at the civil service appeal.[38] Regarding Plaintiff's LWA claim, the City asserts that Plaintiff has failed to argue or cite any evidence that he reported or refused to participate in a practice that violated state law. The City points out that Plaintiff testified that he told Chief Walker what unnamed subordinates had told him, namely that Mayor Baudier and Chief Walker would accept $100 to divert a ticket or have it dismissed.[39] The City argues that neither this speculative testimony, nor the fact that Phil Ramon's ticket allegedly went missing, nor the waitress at Bobby's Seafood "thanking Walker for taking care of her ticket" constitute competent summary judgment evidence or demonstrate that Plaintiff reported a violation of state law or refused to participate in a violation of state law.[40] As such, the City maintains that its Motion should be granted.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of

---

[37] R. Doc. 88 at pp. 1-2.
[38] *Id*. at p. 2.
[39] R. Doc. 88 at p. 2 (*quoting* R. Doc. 78 at pp. 5-6).
[40] R. Doc. 88 at pp. 2-3.

law.[41] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[42] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[43] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[44]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[45] The nonmoving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[46] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving

---

[41] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[42] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[43] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[44] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[45] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[46] *Id.* at 1265.

party's claim.[47] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[48]

## III. ANALYSIS

### A. Count II: Plaintiff's First Amendment Claim.

In Count II of the Complaint, Plaintiff asserts a First Amendment retaliation claim against Chief Walker and Mayor Baudier, alleging that they "acted together" to violate his First Amendment rights when they terminated him for exercising his right to publish his personal opinions on general matters of local public safety on the Facebook page at issue.[49] Plaintiff asserts that by doing so, they acted for the City.[50] On August 5, 2021, the Court dismissed Plaintiff's First Amendment retaliation claim against Chief Walker, finding that Plaintiff had failed to assert a plausible First Amendment retaliation claim against Chief Walker in the Complaint.[51]

The Court reaches the same conclusion here. As the Court explained in its prior Order, to establish a *prima facie* case for First Amendment retaliation, a public employee must show that:

(1) He suffered an adverse employment action;
(2) He spoke as a citizen, rather than pursuant to his official job duties;
(3) He spoke on a matter of public concern;

---

[47] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
[48] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).
[49] R. Doc. 1 at ¶ 42.
[50] *Id.* at ¶ 43.
[51] The Court notes that the City did not seek dismissal of Plaintiff's First Amendment retaliation claim in its prior Motion to Dismiss (R. Doc. 6), which was the subject of the Court's August 5, 2021 Order.

(4) His interest in the speech outweighed the government's interest in the efficient provision of public services; and
(5) His speech precipitated the adverse employment action.[52]

The Court previously determined that Plaintiff was speaking as a private citizen when he made the Facebook post at issue in this case.[53] Neither party disputes this finding. Thus, at issue in this case are the third and fourth factors. The Fifth Circuit has held that, "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."[54] According to the Supreme Court, "Speech involves matters of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."'"[55]

The Fifth Circuit has held that the inclusion of issues of private concern does not render speech unprotected, but renders it "mixed speech."[56] The Court indicated in its August 5, 2021 Order that Plaintiff's Facebook post may constitute mixed speech, and ultimately concluded that the post did not relate to a matter of public concern.[57] In determining whether a speaker's "mixed speech" relates to a matter of public concern, the Fifth Circuit considers the content, context, and form of the speech

---

[52] *Hardesty v. Cochran,* 621 Fed.Appx. 771, 775-76 (5th Cir. 2015) (citing *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)).
[53] R. Doc. 64 at p. 28.
[54] *Goudeau v. East Baton Rouge Parish Sch. Bd.*, 540 Fed.Appx. 429, 434 (5th Cir. 2013) (quoting *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008)) (internal quotation marks omitted).
[55] *Lane v. Franks*, 573 U.S. 228, 241, 134 S. Ct. 2369, 2380, 189 L.Ed.2d 312 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 131. S.Ct. 1207, 1216, 179 L.Ed.2d 172 (2011)).
[56] *Goudeau v. East Baton Rouge Parish Sc. Bd.*, 540 Fed.Appx. 429, 435 (5th Cir. 2013) (citing *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005)).
[57] R. Doc. 64 at pp. 28-29.

and evaluates whether the speech "'inform[s] the populace of more than the fact of an employee's employment grievance,' is 'made against the backdrop of public debate,' and is not simply made 'in furtherance of a personal employer-employee dispute.'"[58]

The City asserts that the Court already determined that Plaintiff's speech does not relate to a matter of public concern in its August 5, 2021 Order, and that the same conclusion is required here. The City argues that Plaintiff's First Amendment retaliation clam must be dismissed because Plaintiff cannot state a First Amendment retaliation claim against any defendant.[59] In response, Plaintiff asserts that, "Defendants mistake the sense of outrage expressed in Moody's FB posts between the time of the Meeting and the time of his dismissal. The outrage in those posts was not directed to personal matters, because Moody had not as yet been terminated."[60] Plaintiff further asserts that the context of the Facebook post "was his being convinced that repeated patterns of petty corruption on the part of city politicians were putting the morale and safety of the men he was responsible for at risk."[61] Regarding the content of the speech, Plaintiff asserts that, "No reading of Moody's impassioned public statements can attribute it solely to matters of personal concern: Moody had not yet been disciplined or terminated."[62]

This Court previously determined that the Complaint fails to state a claim for First Amendment retaliation because Plaintiff's Facebook post does not relate to a

[58] *Goudeau*, 540 Fed.Appx. at 435 (quoting *Salge*, 411 F.3d at 187-88).
[59] R. Doc. 67-1 at p. 8.
[60] R. Doc. 78 at p. 8.
[61] *Id*. (citing *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)).
[62] R. Doc. 78 at p. 8.

matter of public concern and, instead, centers around Plaintiff's grievance with the HPD.[63] As the Court previously explained regarding the context and form of the speech at issue, Plaintiff's Facebook post followed on the heels of a private meeting in which Plaintiff voiced a grievance regarding the alleged ticket-fixing within HPD and took the form of a social media post.[64] Plaintiff does not dispute these facts in his Opposition brief. That Plaintiff had not yet been terminated at the time of the Facebook post does not change these facts or the timing of the post.

In the Opposition brief, Plaintiff asserts that the Facebook post was a matter of public concern because, "He was keeping the public aware of accidents, arrests and crimes in the City."[65] The Facebook post at issue, however, does not support Plaintiff's assertion. The post contains no reference to any accidents, arrests, or crimes in Harahan, nor does it mention alleged ticket fixing or any criminal wrongdoing. Further, nothing in the Complaint or the Opposition brief suggests that the Facebook post was made against a backdrop of a public debate on ticket fixing (or crimes, or anything else). Plaintiff has failed to present any summary judgment evidence to show that he will be able to meet his burden of showing that the Facebook post at issue concerned matters of public concern. Indeed, the format and content of the social media post, including the capitalization of some words and use of a derogatory term, further supports that it is nothing more than the ranting of an individual. As such, Plaintiff has failed to show that there is a genuine issue of

---

[63] R. Doc. 64 at p. 29.
[64] *Id.*
[65] R. Doc. 78 at p. 4.

material fact for trial regarding his First Amendment retaliation claim. Plaintiff's disagreement with the Court's prior ruling that his Facebook post does not address a matter of public concern does not create a genuine issue of material fact for trial. As such, the Court finds that the City is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

**B. Count III: Plaintiff's Claim under the Louisiana Whistleblower Act, La. R.S. 23:967.**

In Count III of the Complaint, Plaintiff alleges that Chief Walker and Mayor Baudier, acting for the City, terminated Plaintiff for objecting to the practice of ticket fixing at the HPD and for refusing to participate in the practice, in violation of the Louisiana Whistleblower Act, La. R.S. 23:967 (the "LWA").[66] That statute provides that:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> > (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> > (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> > (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
>
> B. An employee may commence a civil action in a district court where

[66] R. Doc. 1 at ¶¶ 44-45.

> the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section . . . .[67]

The LWA "provides certain protections to employees who threaten to disclose an employer's illegal activity . . . ."[68] According to the Louisiana Supreme Court, "In order to bring an action under La. R.S. 23:967, the employee must establish the employer engaged in workplace conduct constituting an actual violation of state law."[69]

In both the Complaint and the Opposition brief, Plaintiff asserts that the City violated the LWA by terminating Plaintiff "for objecting to the practice of 'ticket fixing' at the HPD and for refusing to participate in that practice."[70] Nowhere in the Complaint or the Opposition brief, however, does Plaintiff identify the Louisiana law he purportedly advised the City, through Chief Walker or Mayor Baudier, that it was violating through the alleged ticket-fixing scheme.[71]

The Court further finds that Plaintiff has not presented any evidence to show that he reported an actual violation of Louisiana law to the City during his June 26, 2020 meeting with Chief Walker. In fact, the evidence before the Court, namely Plaintiff's deposition testimony, confirms that Plaintiff did not report a violation of Louisiana law during his June 26, 2020 meeting with Chief Walker. Plaintiff's

---

[67] La. R.S. 23:967(A) & (B).

[68] *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014); *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 702 (E.D. La. 2013).

[69] *Encalarde v. New Orleans Ctr. For Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15), 158 So.3d 826 (citing *Accardo v. Louisiana Health Services and Indemnity Company*, 05-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381; *Hale v. Touro Infirmary*, 04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210. *Accord*, *Williams v. Hospital Service District of West Feliciana Parish, Louisiana*, 250 F. Supp. 3d 90, 94-95 (M.D. La. 2017).

[70] R. Doc. 1 at ¶ 45; R. Doc. 78 at p. 4.

[71] *See, generally*, R. Docs. 1 & 78.

testimony reveals that Plaintiff merely informed Chief Walker of his "perception" regarding ticket-fixing in Harahan. When specifically asked whether he raised "any violations of law" during his June 26, 2020 meeting with Chief Walker and others, Plaintiff responded, "Perceptions."[72] Plaintiff clarified that the issue raised during the meeting was, "The perception, at the time I brought it to the Chief of Police -- immediately after it was brought to my attention by Officer Schneider, Officer Mitchell and some other folks, that the perception–I'm just saying–perception—is if you paid Baudier $100 cash, you can get your ticket thrown out, dismissed, deferred."[73] When asked again what he brought to Chief Walker's attention during the June 26, 2020 meeting, Plaintiff reiterated that, "The perception was not only Walker was a dirty ticket-fixer–I mean, Baudier—that now Walker's name was coming into the conversation," and further testified that he said something to the effect that the perception is that Mayor Baudier fixes tickets.[74] When defense counsel asked Plaintiff, "I think what you are telling me is that you told Chief Walker there was a perception that the Mayor fixes tickets, and now, there is a perception that – you—Chief Walker—fixes them," Plaintiff responded with, "Exactly."[75] The City points out that Plaintiff testified that on June 24, 2020, two days before his meeting with Chief Walker, he told other officers not to "spread that rumor" about Mayor Baudier and Chief Walker fixing tickets for $100 because it was only a "perception"

---

[72] R. Doc. 67-4 at p. 38.
[73] *Id.* at pp. 6-7.
[74] *Id.* at p. 8.
[75] *Id.* at p. 9.

at that time.[76] Plaintiff testified that after his conversation with those officers, he walked into Chief Walker's office and said, "There's a perception that if you give $100 to the Mayor and he fixes tickets."[77] Finally, when defense counsel asked Plaintiff, "Did you bring to the Chief anything other than perception or conjecture?" Plaintiff responded, "No, ma'am."[78]

Plaintiff does not address any of this testimony in his Opposition brief. Instead, Plaintiff asserts that in June 2020, other officers confronted him "with the problem of ticket fixing in the City and the safety and morale issues it presented for the police force in the City," and that he "went up his chain of command to Chief Walker and told him about the ticket fixing problem," reporting that, "the experiences of his police officers were that he and Mayor Baudier would fix a tickets [sic] for $100.00."[79] Plaintiff further asserts that he "reported to Walker what he was told to him by subordinates, that the Mayor or Walker will accept $100 to divert the ticket or have it dismissed."[80] Plaintiff also alleges that he "walked out of the meeting with the Mayor and Council after hearing from his patrol officers of the widespread public perception of payoffs and bribes infesting the enforcement of the municipal traffic laws of Harahan."[81] Plaintiff, however, has failed to direct the Court to any testimony or evidence to support that he was terminated after advising the City of a violation of Louisiana law. As such, Plaintiff has not shown that he will be able to prove an

---

[76] *Id*. at pp. 10-11.
[77] *Id*. at p. 11.
[78] *Id*. at p. 15.
[79] R. Doc. 78 at p. 5.
[80] *Id*. at pp. 5-6 (*citing* R. Doc. 78-3 at pp. 3-4).
[81] R. Doc. 78 at p. 7.

essential element of his LWA claim at trial. Because Plaintiff has failed to carry his burden of showing that there is a genuine issue for trial,[82] the Court finds that the City is entitled to summary judgment on Plaintiff's LWA claim.[83]

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment, filed by defendant, the City of Harahan[84] is **GRANTED.** Plaintiff's First Amendment retaliation claim and Louisiana Whistleblower Act claim, asserted in Counts II and III of the Complaint, are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, October 26, 2021.

Wendy B. Vitter

**WENDY B. VITTER**
**United States District Judge**

---

[82] *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

[83] The Court notes that Plaintiff asserts in his Opposition brief that "the hearing officer" at his "Unemployment Benefits hearing in August of 2020" determined that Moody had not engaged in any misconduct in connection with his employment. R. Doc. 78 at pp. 8-9 (*citing* R. Doc. 78-6). This is a gross overstatement of the Administrative Law Judge's narrow findings, which were limited to a determination of whether the City met its burden of proving misconduct on Plaintiff's part sufficient to deny him unemployment insurance benefits. R. Doc. 78-6 at p. 2. Plaintiff claims that the "hearing officer" concluded that, "a preponderance of the evidence fails to support a finding of legal misconduct. Put another way, there is doubt concerning the incident that eventually led to the claimant's discharge . . . ." R. Doc. 78 at p. 9 (*quoting* R. Doc. 78-6 at p.2) (internal quotation marks omitted). Plaintiff then summarily asserts that, "Legal doubt precludes summary judgment." R. Doc. 78 at p. 9. Plaintiff, however, fails to explain how this purported finding by an Administrative Law Judge raises a genuine issue of material fact regarding his First Amendment retaliation claim or his LWA claim. Moreover, Plaintiff fails to mention that the Administrative Law Judge explicitly concluded that, "The employer had the burden of proving misconduct *sufficient to deny unemployment insurance benefits to the claimant*. Here, the evidence is lacking in that regard." R. Doc. 78-6 at p. 2 (emphasis added). The Administrative Law Judge further explained, "To that end and because of the beneficial purpose of unemployment compensation, the term 'misconduct' should be construed in such a manner as to give benefit of the doubt to the claimant." *Id*. These findings do not create a genuine issue of material fact regarding his First Amendment retaliation claim and whether Plaintiff's Facebook post addressed a matter of public concern. Nor do they create a genuine issue of material fact regarding Plaintiff's LWA claim and whether Plaintiff advised the City of a violation of Louisiana law regarding the alleged ticket fixing in Harahan. As such, the Court finds that the Administrative Law Judge's findings do not preclude summary judgment.

[84] R. Doc. 67.